## No. 9500.

### HOUSTON *v.* SNYDER.

1. CONTRACT—*Construed.* Plaintiff holding contracts from certain parties residing in another state for the delivery by such non-residents of a specified number of lambs, assigned it to defendant, in consideration of defendant's written agreement to pay "a cent a pound on lambs that are delivered to me" by the parties contracting to make the delivery. In fact no lambs were ever delivered, nor were the parties to the original contract with plaintiff, able to make delivery. *Held* that no lambs having ever been delivered to the defendant, plaintiff was not entitled to an action against him.

2. VOLUNTARY PAYMENT—*When May Be Recovered.* Money voluntarily paid under no mistake of fact, and without fraud or imposition upon the one making the payment, cannot be recovered; e. g. where under a contract by which he is only conditionally liable the party with full knowledge of all the facts makes payments upon account of such contract, they cannot be recovered.

*Error to Denver District Court, Hon. Julian H. Moore,*
*Judge.*

Mr. MERRICK K. EDWARDS and Mr. W. B. MORGAN, for
plaintiff in error.

Messrs. ALLEN & WEBSTER, for defendant in error.

Mr. Justice Teller delivered the opinion of the court.

PLAINTIFF in error was plaintiff below in an action for
a claimed balance on a contract with defendant concerning
the sale of certain lambs.

The complaint alleges that plaintiff, doing business as
The Houston Commission Company, having bought from
the firm of Harris & Anderson a large number of lambs, at
twelve cents a pound, turned his contract over to the de-
fendant at thirteen and a quarter cents per pound, and per-
mitted him to make a contract for said lambs directly with
said firm; that such contract with said firm having been
entered into, the defendant induced plaintiff to make his
price to defendant thirteen cents a pound, whereupon de-
fendant gave him a memorandum, as follows:   "This is to
certify that the Houston Commission Company are entitled
to a cent per pound on lambs that are delivered to me by
Harris & Anderson on a certain contract of this date.
W. A. Snyder."

The complaint further alleges that when the time had
arrived for the delivery of the lambs under said. contract,
the defendant, without plaintiff's knowledge, released
Harris & Anderson from all obligation under the contract,
receiving for such release a large sum of money.

Plaintiff claims a right to recover one cent per pound on
10,000 lambs of the average weight of sixty-five pounds,
less $2,250, already paid to him by defendant.

Defendant, by answer, denied that he owed plaintiff any-
thing, and set up a counterclaim for $2,250, "loaned" to the
plaintiff subsequent to the making of said contract.

The court found for the defendant on plaintiff's claim
under the contract, and also for the defendant on the

counterclaim. From a judgment entered on said findings, plaintiff brings error.

We find no basis in the record for the contention of plaintiff in error that his action is upon an oral contract made prior to the delivery of the memorandum set out in the complaint. The pleading indicates that the memorandum expressed a new agreement, following, as it does, the allegation that the defendant had induced the plaintiff, and the plaintiff had consented, to make his price thirteen cents a pound; one cent more than Harris & Anderson were charging for the lambs. He could hardly, in good faith, accept the memorandum from defendant, given to him under those circumstances, and later contend that it did not express the final agreement. Indeed, the plaintiff's testimony is conclusive on the point. When asked, "What did Snyder give you as evidence of the arrangement between you?" he replied, "He gave me a written memornadum signed by himself." The pleading apparently recognizes this view by charging the defendant with having, without plaintiff's consent, excused non-delivery. If his rights did not depend upon the delivery of lambs, he was not concerned with the release. Under some circumstances a release, and consequent prevention of delivery by plaintiff might be material; but it is not so in this case. Plaintiff's compensation or profit was to arise from the delivery of lambs under the contract between defendant and Harris & Anderson. He was not entitled to anything on a delivery to the defendant of lambs which he might make, on his own account. His right was limited to a specified transaction. If Harris & Anderson made no delivery, defendant received no advantage from the turning over to him of plaintiff's option, and plaintiff had no profit. That is clearly in accord with the intention of the parties, and is fair to both.

The evidence establishes the fact that the release of Harris & Anderson was made in good faith. The contract between defendant and Harris & Anderson, to which reference is made in the memorandum contract with plaintiff, provided for the sale of certain lambs contracted for by

Harris & Anderson from specified individuals in Utah. The evidence establishes the fact that these parties could not deliver any lambs under their contract. That one, at least, of the contracts was void because the seller of the lambs never signed nor authorized the signing of it. Harris testified that when he demanded the lambs he discovered that all of such contracts were "fakes".

We, therefore, find no error in the judgment for defendant on plaintiff's cause of action.

The judgment against plaintiff on the counterclaim is manifestly wrong.

The claim made by defendant for money loaned, was not supported by any evidence whatever.

Defendant testified that he "paid" plaintiff $750 upon his request. A receipt for it, containing the memorandum "Part pay't comsn 10,000 lambs sold." is in evidence. As to the other payments of $500 and $1,000, respectively, there is no evidence except that of plaintiff, who testified that nothing was said about a loan.

It is evident that the payments were advances made by defendant on the contract.

We cannot agree with counsel for defendant in error that, when one receives money from one who is under no obligation to pay it, the law implies that he will return it.

This is too broad a statement. In some cases there is such an implication, and in others there is not. "The law is well settled that money voluntarily paid, under no mistake of fact, and without fraud or imposition upon the party paying it, cannot be recovered." *Hollingsworth v. Stone,* 90 Ind. 244.

This court has announced the same rule. In *Lewis v. Hughes,* 12 Colo. 208, at page 212, 20 Pac. 623, it is said: "It is well settled that an action will not lie to recover back money paid voluntarily with a full knowedge of the facts and circumstances." To the same effect is *Steck v. Irrigation Co.,* 4 Colo. App. 323, 35 Pac. 919. See also *Smith v. Schroeder,* 15 Minn. 35; *Dall v. Earle,* 59 N. Y. 638, and *Elliott v. Swartwont,* 10 Peters 137.

The reason of the rule is well stated in *Brisbane v. Dacres*, 5 Taunt. 154, where the English cases are reviewed. Gibbs, J., speaking of a voluntary payment, under no mistake as to the fact, said: "He who receives it has a right to consider it his without dispute; he spends it in confidence that it is his; it would be most mischievous and unjust if he, who has acquiesced in the right by such voluntary payment, should be at liberty, at any time within the statute of limitations, to rip up the matter and recover the money. He who has received it is not in the same condition; he has spent it in the confidence that it was his and perhaps has no means of re-payment."

There was here no mistake as to the facts, which were that there was a contract between plaintiff and defendant under which defendant was only conditionally liable to the plaintiff, and under which his liability would be fixed, in any event, only at a future date. If, under these circumstances, he chose to make payments, they were such as the authorities call voluntary and not recoverable.

The judgment is affirmed as to plaintiff's demand, and reversed as to defendant's counterclaim. The costs in this court will be taxed against plaintiff in error.

*Affirmed in Part and Reversed in Part.*

Chief Justice Garrigues and Mr. Justice Burke concur.